UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FATIMA ALI,

      Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

      Defendant[2].

04-CV-1038E(Sr)

MEMORANDUM

and

ORDER[1]

---

INTRODUCTION

Plaintiff Fatima Ali ("Ali") brings this action pursuant to Title II of the Social Security Act, §201 *et. seq.* (codified at 42 U.S.C. §401 *et. seq.*) claiming that the Commissioner of Social Security improperly denied her application for Supplemental Security Income ("SSI") for her disability.[3]  Specifically, Ali alleges that the Administrative Law Judge ("ALJ") applied an incorrect legal standard and that his decision was not supported by substantial evidence.  Pending before the Court are Ali's and the Commissioner's competing Motions for Judgment on the Pleadings.

On March 16, 2001, Ali's mother filed an application for SSI benefits on her behalf claiming that Ali was disabled based on severe scoliosis and frequent

---

[1] This decision may be cited in whole or in any part.

[2] For convenience, defendant will be identified by official title only. *See* Fed.R.Civ.. 25(d); 42 U.S.C. §405(g) (action survives despite change in office of Commissioner).

[3] Ali was 14 years old at the time of the application for benefits and was 17 years old at the time of her hearing before the ALJ.  Ali is currently 20 years old.

headaches and back pain. (R. 76-78A.)[4] The application was initially denied and a hearing before an ALJ was held on July 17, 2003. (R 26-29; 351-72.) In a decision dated January 14, 2004, the ALJ denied the application, concluding that Ali was not disabled. (R. 10-20.) On October 27, 2004, the Appeals Council denied Ali's request for review, and the ALJ's determination became the final determination of the Commissioner on that date. (R. 4-6.) Ali filed this action on December 30, 2004.

## FACTS

Ali began receiving disability benefits as of March 12, 1997, with an onset date of March 15, 1995 due to her diagnosis of scoliosis. In March 1997, Ali underwent surgery to stabilize her condition and rods were inserted on both sides of her spine. Thereafter on June 28, 1998, she suffered additional injury to her back and neck when a portion of a ceiling in her home fell on her. Further, in or about July 1998, she was physically assaulted by several girls and suffered blows to her face.

After her surgery, Ali experienced behavioral difficulties. From September 1999 to the Spring of 2000, although registered to attend Buffalo Public Schools, specifically, Fulton Academy, Ali actually attended on only 20 days — missing 90 days — and was late on most of the days on which she did attend. Her mother reported that Ali ran away from home on numerous occasions, was irritable, argumentative and hostile. On April 13, 2000 by order of Erie County Family Court,

---

[4]All references preceded by "R." indicate the appropriate page(s) of the administrative record which was filed with the Commissioner's Answer to the Complaint.

Ali was placed in the Gustavus Adolphus Facility in Jamestown, N.Y. due to her truancy and an incident of shoplifting.

While at Gustavus Adolphus, Ali was placed in a special education seventh grade class in the Jamestown Public Schools.[5] Her teacher at that time indicated that Ali exhibited difficulty with coping with frustration and was easily frustrated, that she had difficulty with social interaction, often accusing peers of "getting in her face." Her counselors at Gustavus Adolphus indicated that she continued to exhibit behavioral problems — *e.g.*, talking back, ignoring requests, irritability — and poor decision-making skills — *e.g.*, would frequently "go along with the crowd".[6] Ali's disability benefits were discontinued as of April 2000 because, due to her placement in Gustavus Adolphus, she no longer met certain income requirements.[7] Nevertheless, she was re-certified for disability benefits in June 2000 after a Continuing Disability Review determined that she had a marked impairment in the areas of social functions and personal functions and that her disability was

---

[5]While enrolled in Buffalo Public Schools, Ali had been placed in regular education classes. There is no indication that she was ever evaluated as having special needs or that she ever underwent evaluation at all. Her Gustavus Adolphus records indicate that she was placed in special education and that evaluation was to be conducted in June 2000. If such evaluation was ever completed, it is not reflected in the record.

[6]During her placement, Ali was injured when, while running in the hallways, she ran into a steel door. The records indicate that Ali was taken to the hospital, may have lost consciousness for a brief period, and required several stitches to close a gash on her forehead.

[7]At the hearing before the ALJ, Ali indicated that her SSI benefits terminated only upon her release from Gustavus Adolphus in March 2001.

functionally equivalent to Appendix 1, Subpart P listing 112.05(B) (Mental Retardation).[8]

After Ali was released from Gustavus Adolphus on March 15, 2001, and attended Buffalo Alternative High School and Bennett High School, apparently in regular education classes.[9]

On March 16, 2001, Ali's mother filed a new application for SSI benefits on Ali's behalf. Ali was evaluated by pediatrician Dr. Savitri Kasemsri on June 15, 2001. He concluded that she retained residual effects of her scoliosis and the corresponding surgery. He could not determine a cause for her headaches but indicated that they could be migraine in nature. On August 2, 2001 Dr. Thomas Dickinson performed a psychiatric evaluation of Ali. He concluded Ali to be of average intelligence and found an 8th grade reading level by application of the Wide Range Achievement Test. Dickinson diagnosed a possible Cognitive Disorder based on the head injury she sustained at Gustavus Adolphus and also Oppositional Defiant Disorder based on her continuing truancy, her oppositional behavior at home and refusal to perform chores. He noted her prognosis to be fair with expected counselling, that Ali appeared to be in regular education classes but that truancy continued to be problematic. Dickinson recommended further cognitive testing.

---

[8]The ALJ noted that such a finding could have been erroneous in light of the lack of record showing mental incapacity evidenced by dependence upon others for personal needs grossly in excess of age-appropriate dependence. (R. 15.) The ALJ concluded it more likely that she met the listing for section 101.05(B)(2). (R.15.)

[9]Again, there is no evidence that any special education evaluation was conducted.

On July 15, 2003 Dr. Renee Baskin-Creel performed both an Intelligence Examination and a Psychiatric Examination of Ali. After administration of the WRAT-III achievement measure, Baskin-Creel found a reading/decoding standard score of 87 which is equivalent to a 7th grade level. After administration of the WAIS-III intelligence measure, Bskin-Creel found a verbal scale IQ of 82, a performance scale IQ of 76 and a full scale IQ of 78. The results placed Ali in the below average-borderline range of intellectual functioning.

Notwithstanding such results, Baskin-Creel concluded that Ali is able to:

> "attend to, follow and understand age appropriate directions, complete age appropriate tasks, adequately maintain appropriate social behavior, respond appropriately to changes in the environment, learn in accordance to cognitive functioning, ask questions and request assistance in an age-appropriate manner, be aware of danger and take needed precaution, and interact adequately with peers and adults."

(R. 331.)

Ali testified before the ALJ on July 17, 2003. She stated that she continues to suffer back pain on a daily basis, that she experiences headaches on a daily basis, and at times feels dizzy and disoriented. Ali stated that, during the summer months, she stays home and cares for her 11 month old son. However, she further stated that her daily routine consists of awakening at 8:30 a.m., checking on her son, returning to sleep at 9:30 a.m., sleeping until 5:00 p.m., remaining awake until 4:00 a.m. and then sleeping until 8:30 a.m. Ali testified that she simply falls asleep at various

points during the day.[10]  During the school year, Ali was expected to attend school from 9:30 a.m. to 2:00 p.m. but frequently fell asleep in class and was sent home.  Ali repeated the ninth grade twice, apparently due to poor attendance, and at the time of the hearing, Ali intended to enroll in a GED program rather than regular schooling.  Finally, Ali stated that, other than caring for her son, she did not contribute to household chores because the chemicals contained in cleaning products make her sick.[11]

## DISCUSSION

An ALJ's determination as to eligibility for benefits must be upheld if it is supported by "substantial evidence."  Such is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co.* v. *National Labor Relations Bd.*, 305 U.S. 197, 229 (1938)).  The Social Security Act states that:

> "An individual under the age of 18 shall be considered disabled for the purpose of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or

---

[10]In contrast, two days prior to the hearing, on July 15, 2003, Ali told Dr. Baskin-Creel that she experienced difficulty falling asleep.

[11]There is no medical support for the claim that such chemicals make Ali sick, nor is there any support in the record in any statement from Ali's mother that Ali could not assist with chores.  Ali's mother was very clear that Ali could perform chores but simply refused to do so.

    which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. §1382c(a)(3)(C).

A three-step sequential analysis is employed when determining whether a child is disabled. The ALJ asks:(1) whether the child is performing substantial gainful activity; (2) whether the child's impairment or combination of impairments is severe; and (3) whether the impairment or combination of impairments meets, medically equals or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §416.924. In determining whether a child's impairment functionally equals a listed impairment, the ALJ evaluates the child's functioning in six "domains of functioning." A finding of an extreme limitation in any one domain or a marked limitation in any two domains indicates that the child's impairment functionally equals a listed impairment and the child is determined to be disabled. *See* 20 C.F.R. §416.926a.

Here, the ALJ determined that Ali was not engaged in substantial gainful activity and that her scoliosis constituted a severe impairment, but the ALJ determined, after examining the six domains of functioning, that Ali's combination of impairments did not functionally equal any listed impairment. Ali objects to the ALJ's determination and argues that the ALJ — in some unspecified manner — applied the wrong legal standard and that his determination was not supported by

substantial evidence because the medical documentation indicates that Ali's impairments functionally equal listing 112.50(B), the listing for mental retardation.

The Court concludes that the ALJ properly applied the correct legal standards in this case. The ALJ followed the three-step sequential format and, in the third step, considered whether Ali's impairments met, medically equaled or functionally equaled a listed impairment. In determining whether Ali's impairments functionally equaled a listed impairment, the ALJ properly considered all six "domains of functioning," including: Acquiring and Using Information; Attending and Completing Tasks; Interacting and Relating with Others; Moving About and Manipulating Objects; Caring for Self; Health and Physical Well-Being.

In assessing Ali's level of function within the domains, the record demonstrates that the ALJ considered Ali's medical and school records, the records from her placement at Gustavus Adolphus and the consultative evaluations requested of Thomas Dickinson and Renee Baskin-Creel. Although Ali faults the ALJ's determination, claiming that he inappropriately relied on only portions of the records which supported a finding of no disability, the Court does not conclude that the ALJ overlooked evidence in the record and finds that the ALJ's determination, as a whole, was supported by substantial evidence.

Accordingly, it is hereby **ORDERED** that the Commissioner's Motion for Judgment on the Pleadings is granted, Ali's Motion for Judgment on the Pleadings

is denied and the Clerk of the Court is directed to take all steps necessary to close this case.

DATED:     Buffalo, N.Y.

February 28, 2007

*/s/ John T. Elfvin*
JOHN T. ELFVIN
S.U.S.D.J.